# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

MARTIN J. GREEN, :

    Plaintiff, :

vs. : CA 13-0368-WS-C

CAROLYN W. COLVIN, :
Acting Commissioner of Social Security,
                                                   :

    Defendant.

## **REPORT AND RECOMMENDATION**

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits. This action is before the Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the February 19, 2014 hearing before the undersigned, it is recommended that the Commissioner's decision denying plaintiff benefits be reversed and remanded for further proceedings not inconsistent with this decision.

Plaintiff alleges disability due to lumbar spondylosis, facet arthropathy, degenerative joint disease of the knees, sinusitis, daytime somnolence, and hypertension. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2010.**

**2.     The claimant did not engage in substantial gainful activity during the period from his alleged onset date of August 12, 2005 through his date last insured of December 31, 2010 (20 CFR 404.1571 *et seq*.).**

**3.     Through the date last insured, the claimant had the following severe impairments: lumbar spondylosis, facet arthropathy, degenerative joint disease of the knees, sinusitis, daytime somnolence, and hypertension (20 CFR 404.1520(c)).**

.     .     .

On August 10, 2005, the claimant was seen at the Mobile Infirmary for back pain. X-rays showed a normal lumbosacral spine and a strain was indicated. On October 14, 2005, a consult at the infirmary noted that MRI testing had revealed facet arthropathy at the L3-4 and L4-5 levels of the claimant's lumbar spine. There was no disc degeneration.

Reports from Guy L. Rutledge, III, M.D., and others at The Orthopaedic Group, show that on March 6, 2006, the claimant reported his history of a back injury. The MRI results were noted. An EMG test had indicated early neuropathy, a diagnosis not subsequently repeated in the record. Dr. Rutledge noted that physical therapy notes indicated the claimant could lift objects weighing 20 to 25 pounds. On examination, there was no significant tenderness of the back and the claimant was noted to walk with a normal gait pattern. His reflexes were normal and there was no motor weakness. On March 23, 2007, Dr. Rutledge assessed the claimant as being at maximum medical improvement, and described him as having a 5% impairment because of lumbar sprain with facet arthropathy. It was noted that the claimant did not plan to return to work. On January 30, 2008, the claimant reported right knee pain. X-rays revealed mild changes but Dr. Rutledge noted that work restrictions had not been assessed because the claimant did not plan to return to work. Exercise and anti-inflammatory medication were recommended. On June 23, 2008, Dr. Rutledge noted the claimant requested that papers be filled out, and stated the claimant could probably return to light duty.[1] On April 28, 2009, Dr. Rutledge noted that the claimant reported back and knee pain. X-rays of the knees revealed mild degenerative changes and x-rays of the back were normal. On January 14, 2010, the claimant reported left knee pain and x-rays again indicated degenerative changes. On May 11, 2010, the claimant stated that his left knee had given way and he had fallen. X-rays of the lumbar spine revealed no evidence of a fracture and the impression was the claimant had a sprain and lumbar spondylosis. Improvement was

---

[1]     Dr. Rutledge specifically stated the following: "[C]an probably return to work in the light duty category *although* this can be further defined by a *FCE*." (Tr. 271 (emphasis supplied).)

expected over the following couple of weeks, and Dr. Rutledge noted that, if improvement did not occur, the claimant could call for physical therapy. On November 18, 2010, in the last treatment note of record prior to the date claimant last met the insured status requirements of the Act, Dr. Rutledge noted that the claimant had kicked a piece of furniture and injured his toe. X-rays revealed a mild deformity of the toe and it was noted that the claimant reported ongoing back and knee pain.

*The claimant last met the special earnings requirements of the Act on December 31, 2010. The first report from Dr. Rutledge after that date was on May 31, 2011, and on that occasion the claimant described the sudden recurrence of back pain several days earlier. His medication was refilled and he was referred for physical therapy.*

. . .

**4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix I (20 CFR 404.1520(d), 404.1525 and 404.1526).**

. . .

**5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he had to have a sit/stand option that afforded him the opportunity to change positions about every 30 minutes. He could not operate foot controls and he could not climb ladders, scaffolds or ropes. He could not kneel, crawl, work at unprotected heights or work around dangerous equipment. He could occasionally climb stairs and ramps, and occasionally bend, stoop or crouch. He could not perform detailed or complex job instructions but he could perform simple tasks, follow one and two step job instructions, and perform unskilled work.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)— i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

3

. . .

In terms of the claimant's alleged disabling symptoms, the Administrative Law Judge notes that when he applied for benefits the claimant completed a questionnaire on which he described daily activities including making his bed, watching television, getting his mail, fixing sandwiches or frozen meals, visiting his friends, paying bills, using his computer, shopping, and going to church. He specified he could lift objects weighing up to 20 pounds and he could stand for 30 minutes at a time. His daily activities, as described when he filed his application, are consistent with the established residual functional capacity. The claimant described low back and knee pain. The medical evidence describes very infrequent medical visits with Dr. Rutledge, his treating orthopedic doctor, and the notes from Dr. Rutledge refer to very sporadic complaints of back and knee pain. The x-ray test reports of record describe minimal changes. The last note from Dr. Rutledge prior to the date the claimant last met the earnings requirements of the Act referred to toe injury and the first report after the claimant last met the earnings requirement was in May 2011, at which time the claimant reported a recurrence of back pain several days earlier. . . . The record shows that, prior to the date the claimant last met the earnings requirements, physical therapy was recommended but no actual physical therapy sessions were documented during the relevant period. The notes from Dr. Rutledge indicated physical therapy notes from March 2006[] were consistent with the claimant being able to lift up to 25 pounds, but those notes are not of record and no later notes, prior to the date he last met the earnings requirement, suggest any other treatment. No other measures used to relieve symptoms were suggested by the claimant's testimony and no other factors related to symptoms were described in the record. The claimant's allegations of disability are not consistent with his history of treatment, are not consistent with the sporadic nature of his treatment, are not consistent with the physical capacities indicated by his treating orthopedic specialist, and are not consistent with any of the objective test findings of record. The claimant's allegations of disability are not credible.

As for the opinion evidence, during the relevant period Dr. Rutledge completed two disability certificates, one [i]n June 2008, and another in August 2009, in which he opined the claimant was disabled for a "produce clerk" job. Dr. Whetstone completed a disability certificate in June [2]008, on which he described the claimant as disabled. The specific treatment notes of Dr. Rutledge, however, described the claimant as capable of light activities. In March 2006, Dr. Rutledge reported that physical therapy reported the claimant could lift 20-25 pounds, which is consistent with the light range of exertion. In June 2008, on the same date he completed the disability certificate, Dr. Rutledge noted the claimant could probably return to light duty. The specific notes from Dr. Rutledge, considered with the disability certificates he completed, show that he believed the claimant

could not return to his past work as a produce clerk, which required heavy exertion, but he further believed the claimant could perform light activities. The specific office notes are not, therefore, inconsistent with the forms he completed, and those notes are given significant weight. The opinion of disability by Dr. Whetstone is granted no weight because Dr. Whetstone has rarely seen the claimant and on those occasions he has treated the claimant it has been for a variety of minor complaints and his opinion is not supported by any other medical opinion or by any test findings of record.

In sum, the above residual functional assessment is supported by the claimant's history of medical treatment, by the minimal objective findings of record, and by the physical abilities described in the specific treatment notes from Dr. Rutledge.

**6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).**

. . .

**7. The claimant was born on August 31, 1962 and was 48 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).**

**8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

**9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10. Through the date[] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).**

. . .

Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and

residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as an information clerk, a garment folder, and a production assembler. The vocational expert testified that the information clerk jobs existed in numbers of 82,000 in the national economy and in numbers of 1,600 in the State economy. The vocational expert stated that the garment folder existed in numbers of 433,000 in the national economy and in numbers of 11,000 in the State economy. The vocational expert testified that the production assembler jobs existed in numbers of 333,000 in the national economy and in numbers of 4,500 in the State economy. The vocational expert further testified that the jobs she identified were examples of jobs that were available, and that other jobs would exist within the hypothetical situation described.

Although the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for this discrepancy. The vocational expert testified that the DOT provided guidance on the jobs. She further stated that she relied on her experience and knowledge of the labor market.

Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.   The claimant was not under a disability, as defined in the Social Security Act, at any time from August 12, 2005, the alleged onset date, through December 31, 2010, the date last insured (20 CFR 404.1520(g)).**

(Tr. 25, 25-26, 27, 27-28, 28-29, 30 & 30-31 (internal citations omitted; most emphasis in original but some added).)  The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

A claimant is entitled to an award of disability insurance benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last for a

continuous period of not less than 12 months. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a) (2011). In determining whether a claimant has met his burden of proving disability, the Commissioner follows a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, if a claimant is performing substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). At the second step, if a claimant does not have an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities, he is not disabled. 20 C.F.R. § 404.1520(c). At step three, if a claimant proves that his impairments meet or medically equal one of the listed impairments set forth in Appendix 1 to Subpart P of Part 404, the claimant will be considered disabled without consideration of age, education and work experience. 20 C.F.R. § 404.1520(d). At the fourth step, if the claimant is unable to prove the existence of a listed impairment, he must prove that his physical and/or mental impairments prevent him from performing his past relevant work. 20 C.F.R. § 404.1520(e). And at the fifth step, the Commissioner must consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of proof through the first four steps of the sequential evaluation process, *see Bowen v. Yuckert,* 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987), and while the burden of proof shifts to the Commissioner at the fifth step of the process to establish other jobs existing in substantial numbers in the national economy that the claimant can perform,[2] the ultimate burden of proving disability never shifts from the plaintiff, *see, e.g., Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 (11th Cir.

---

[2] *See, e.g., McManus v. Barnhart,* 2004 WL 3316303, *2 (M.D. Fla. Dec. 14, 2004) ("The burden [] temporarily shifts to the Commissioner to demonstrate that 'other work' which the claimant can perform currently exists in the national economy.").

May 2, 2007) ("If a claimant proves that she is unable to perform her past relevant work, in the fifth step, 'the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform.' . . . Should the Commissioner 'demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled.'").[3]

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that through the date last insured of December 31, 2010 he could have performed those light jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4]

The plaintiff contended in his brief, in general, that the ALJ erred in giving little weight to the opinions of his treating physicians and in failing to clearly articulate why those opinions were rejected. (*See* Doc. 15.) During oral arguments on January 19, 2014, counsel for plaintiff focused solely upon the argument in the brief that the ALJ erred in failing to discuss the treating orthopedist's September 23, 2011 assessment/opinion. On that assessment form, Dr. Guy Rutledge, plaintiff's treating orthopedist, opined that

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

physical activity, such as walking, standing, lifting, repetitive moving of extremities, etc., would greatly increase plaintiff's symptoms and cause distraction from or total abandonment of task. (Tr. 312.) In addition, Rutledge indicated that plaintiff would be able to engage in sedentary activity only on a repetitive, competitive and productive basis over an 8-hour workday and a 40-hour week without missing more than two (2) days of work per month. (*Id*.) There is no question but that Rutledge's September 23, 2011 assessment/opinion was part of the record before the ALJ, nor is there any question but that the ALJ failed to evaluate that opinion. (*See* Doc. 20, at 12 ("[T]he ALJ did not explicitly discuss and reject Dr. Rutledge's post-date last insured September 2011 opinion[.]").) Nevertheless, the defendant argues that any error in this regard was harmless because nothing in the opinion would change the result in this case. (*See id.*, citing *Shinseki v. Sanders,* 129 S.Ct. 1696, 1705 (2009).) This is so, the defendant reasons, because the plaintiff downplays Rutledge's sedentary work activity statement, which, when combined with the appropriate rules in the Medical-Vocational Guidelines, would still result in a finding that plaintiff is "not disabled" (*see id.* at 11-12) and also because nothing in Dr. Rutledge's assessment can be read as an admission that the treating orthopedist's alleged opinion during the relevant period was a mistake (*id*. at 12). Based upon the discussion that follows, the undersigned cannot agree with the defendant in this regard.

The law in this Circuit is clear that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'" *Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished), quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (other citations omitted). In other words, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good

cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004) (other citation omitted); *see Nyberg, supra,* 179 Fed.Appx. at 591 (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)). And "[t]his is true even if the physician did not treat the claimant until after the relevant period." *Williams, supra,* citing *Boyd v. Heckler,* 704 F.2d 1207, 1211 (11th Cir. 1983),[5] *superseded by statute on other grounds, as recognized in Hand v. Heckler,* 761 F.2d 1545, 1548 n.4 (11th Cir. 1985). Finally, "[a]n ALJ's 'lack of explanation' for failing to address a treating physician's opinion is 'particularly troublesome' when that physician was the claimant's 'long-time treating physician.'" *Nyberg, supra,* 179 Fed.Appx. at 591, quoting *Ryan v. Heckler,* 762 F.2d 939, 942 (11th Cir. 1985).[6]

In light of the foregoing principles, the undersigned can reach no other conclusion than that the ALJ's failure to address the September 23, 2011 opinion of plaintiff's long-time treating physician, Dr. Rutledge, constitutes reversible error. Such error was simply not harmless since this Court can only find that Dr. Rutledge's opinion would not change the result in this case by reweighing the evidence and engaging in conjecture that invades the sole province of the ALJ.

> The instant case . . . is not one where the unmentioned physician's opinion merely supported the ALJ's conclusion, and was thus unnecessary. On the contrary, the potential impact of Dr. Trowbridge's opinion on the ALJ's

---

[5] "[A] treating physician's opinion is still entitled to significant weight notwithstanding that he did not treat the claimant until after the relevant determination date." *Id.*

[6] Of course, if an ALJ's rejection of an opinion by a treating physician rendered after plaintiff's date last insured is supported by substantial evidence the Court must uphold such rejection. *See, e.g., Lofgren v. Astrue,* 2008 WL 1323396, *1 (N.D. Fla. Apr. 4, 2008). The problem here is that the ALJ did not even consider Dr. Rutledge's September 23, 2011 opinion/assessment, much less set forth reasons for rejecting that opinion.

> analysis is strongly and reasonably disputed by the parties. Thus, we cannot say that the failure to address Dr. Trowbridge's opinion was harmless without re-weighing the evidence and engaging in conjecture that invades the province of the ALJ.

*Nyberg, supra,* 179 Fed.Appx. at 592 (citations and footnotes omitted); *see also Keaton v. Astrue,* 2013 WL 69155, *4 (N.D. Fla. Jan. 4, 2013) ("Notably, the ALJ did not mention the opinions of Dr. Souffrant anywhere in his written decision. Dr. Souffrant's opinions reflect significantly greater limitations than those determined by the ALJ in his RFC, and could potentially have great impact on the ALJ's analysis. The Court cannot determine on this record whether Dr. Souffrant was a treating physician and to say the ALJ's omission of her opinion was harmless would require 're-weighing the evidence and engaging in conjecture that invades the province of the ALJ.'"). Stated somewhat differently, while "an estimation of the likelihood that the result would have been different" is relevant to the harmless error analysis, so too is "an awareness of what body (jury, lower court, administrative agency) has the authority to reach that result[.]" *Shinseki v. Sanders,* 556 U.S. 396, 411, 129 S.Ct. 1696, 1707, 173 L.Ed.2d 532 (2009). Here, the findings that the defendant desires this Court to make—that the "sedentary activity" portion of Rutledge's September 23, 2011 opinion, to the exclusion of his pain comment,[7] when combined with the appropriate rules in the medical-vocational guidelines would still render a "not disabled" determination or that this opinion would not change any pre-last insured opinion allegedly held by the treating orthopedist—are determinations that only the ALJ/Commissioner can reach upon weighing the evidence and deciding which evidence to credit or discredit. *Compare Williams, supra,* at *6 ("The ultimate issue, whether plaintiff is disabled, is left to the determination of the

---

[7] Both of these findings, of course, reflect significantly greater limitations that those determined by the ALJ in her RFC determination.

Commissioner[.]") *with Green v. Commissioner of Social Security*, 2010 WL 4941425, *4 (M.D. Fla. Oct. 27, 2010) ("Although the Commissioner contends that the failure to further evaluate the school records and the assessment was not necessary 'because any limitations therein would be inconsistent with [the] record[] as a whole,' this contention is unpersuasive. It is the ALJ's duty to evaluate the evidence and either credit it or discredit it. The Commissioner's contention assumes that the evidence, if evaluated, would necessarily be discredited—a conclusion that is not within the purview of a reviewing Court. It is not the task of this Court to weigh the evidence and establish whether it is consistent or inconsistent with the record in the first instance; that is the duty of the ALJ."), *report and recommendation adopted,* 2010 WL 4941653 (M.D. Fla. Nov. 29, 2010). Accordingly, because the undersigned cannot find that the ALJ's failure to mention or consider Dr. Rutledge's September 23, 2011 opinion/assessment was harmless, it is recommended that this case be reversed and remanded for further proceedings not inconsistent with this decision.

## **CONCLUSION**

The Magistrate Judge recommends that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013) (emphasis in original). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 26th day of February, 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**